[No. 8901.    Department One.    December 29, 1910.]

## C. B. MERRITT, *Respondent*, v. GEORGE J. HIBBARD *et al.*, *Appellants.*[1]

FRAUD — PLEADINGS — COMPLAINT — SUFFICIENCY.    A complaint states a good cause of action for conspiracy to defraud, where it is alleged that the plaintiff was induced by the defendants, through false representations and a prior course of dealing, to put up $3,000 to pay for a worthless timber claim which one of the defendants had agreed to repurchase for a client at an advance.

SAME — ALLEGATIONS OF VALUE — DAMAGES.    In such a case, an allegation that the claim was of no value is not essential to the recovery of damages, where the plaintiff was induced to put up the money and was not to take any title, the name of the grantee in the deed being left blank and to be filled in on the resale to defendant's client.

FRAUD — ACTIONABLE REPRESENTATIONS.    Upon a conspiracy to defraud, whereby plaintiff was induced to put up the money to purchase a worthless timber claim, representations that defendant's client had agreed to purchase the claim and that a cruise had been made showing it to be valuable, are actionable.

FRAUD — EVIDENCE — ADMISSIBILITY.    Upon a conspiracy to defraud, whereby plaintiff was induced to purchase a worthless timber claim, evidence of the small value of the claim is admissible.

NEW TRIAL — GROUNDS — ERROR OF LAW.    A new trial is properly granted where the trial court had committed error of law in granting a nonsuit or in excluding evidence.

Appeal from an order of the superior court for King county, Ronald, J., entered January 18, 1910, granting plaintiff a new trial, after the granting of a nonsuit, in an action for fraud tried before the court and a jury.   Affirmed.

*McBurney & Cummings* and *Reed & Hardman*, for appellants.

*Heber McHugh* and *John T. Casey*, for respondent.

PARKER, J.—By this action the plaintiff seeks to recover damages from the defendant, A. L. Grandy, George J. Hib-

[1]Reported in 112 Pac. 350.

bard, and John F. Reed, which it is·alleged resulted to plaintiff from deceit and fraud practiced upon him by the defendants, inducing him to advance the sum of $3,000 for the purchase price of a certain timber claim. The defendant Reed demurred to the complaint. His demurrer being overruled, he answered, denying the acts of fraud and deceit charged against him. The defendant Hibbard answered separately, denying the acts charged against him. The defendant Grandy is not a party to this appeal, so we are not concerned with the disposition of his contentions by the trial court. The cause proceeded to trial with a jury, against all of the defendants, and at the conclusion of the evidence introduced in behalf of the plaintiff, the court granted a nonsuit in favor of all of the defendants. Thereafter the plaintiff moved for a new trial, which motion was granted. The defendants ·Hibbard and Reed have appealed from the order granting a new trial.

The first general contention made by counsel for appellants is that the trial court erred in overruling the demurrer to the complaint, and in admitting evidence over appellants' objection, made upon the ground that ·the complaint failed to state a cause of action. The complaint is of considerable length, and there may be some things in it which would render it objectionable and vulnerable to attack in some manner, but we are now only concerned with its sufficiency as against a general demurrer, since that is the form of attack made both by the demurrer and the objection. It alleges in substance the following: All of the defendants were engaged in buying and selling timber land in this state at and prior to the time of the commission of the acts complained of. At the same time, plaintiff and defendant Grandy were copartners engaged in selling timber lands in this state. All of the parties had their places of business at Seattle. In 1906, plaintiff met one M. L. Fitch, a timber buyer of Grand Rapids, Michigan. Plaintiff was then informed by Fitch that he

would buy any good timber lands in this state which plaintiff or his firm could procure for him. Plaintiff was also then informed by Fitch that he would have to return to and remain in Michigan, and would be represented in this state by defendant Hibbard, who was a stepson of Fitch. Plaintiff was also then informed by Fitch that he would buy timber lands on the cruise of one J. A. Withrow, a timber cruiser living in Clallam county, and thereafter Fitch did invariably buy timber lands on the unverified cruise of Withrow until August 9, 1907. During this period plaintiff and his firm procured many timber claims for Fitch by the following course of business, which was well known to defendants.

"After being advised that a tract of timber was for sale, said Hibbard would inform plaintiff that Fitch had written him, said Hibbard, to buy it at a certain price, and that the money to pay for the same would be sent to the State Bank of Seattle, or to the Port Angeles Bank, as soon as the claim was secured, and said Hibbard would tell plaintiff to buy said tract for said Fitch and have a nominal consideration of five or ten dollars inserted, and have the said deed run to blank grantee and then have the deeds so made out deposited in one of the banks as aforesaid, all of which plaintiff would do, and said deeds would remain in the bank until the money would arrive from said Fitch. That there was always more or less time elapsed between the order by Hibbard and the arrival of the money at the bank, but the same invariably came prior to said 9th day of August 1907, and upon its arrival the said money was paid over to the respective grantors on the order or instructions from plaintiff. That plaintiff had nothing to do with the examination of abstracts. That in the purchase of said tracts, arranging payments therefor, securing deeds and fixing prices, plaintiff acted solely on the statements of said Hibbard."

In cases where haste was necessary Hibbard communicated with Fitch by telegraph. Some time prior to August 9, 1907, the claim here involved was offered to defendant Grandy by an agent of defendant Reed for $800, and thereupon Grandy agreed to buy the claim at that price, and was sent by the

agent to Reed to close the deal.  Grandy concealed from plaintiff all knowledge of this transaction, and secretly obtained knowledge from Reed that the land was worthless, and on August 9, 1907, Grandy knew that the land was without timber and worthless, and fraudulently concealed all such knowledge from plaintiff.  Reed secured control of the claim from the owner for little or no consideration, and for a long time prior to August 9, 1907, he knew it was worthless. Hibbard having asked plaintiff to buy the claim from Reed, plaintiff advised with Grandy as a partner concerning it, when Grandy stated that he had no money himself, but advised plaintiff to use his own money, which Grandy knew plaintiff had, and to do as Hibbard directed and there would not be much delay in getting a return of the money, as Fitch would take the land.  Hibbard, acting in concert with the other defendants, stated to plaintiff that the claim was for sale, and that Fitch had written to him that he would buy it and would pay as much as $4,000; that he, Hibbard, had received a letter from Fitch inclosing a cruise of the timber on the land by Withrow, showing 6,500,000 feet of timber on it; that Reed held the claim for sale and urged plaintiff to buy it for Fitch; and that if plaintiff would raise the money and get the claim for $3,000, Hibbard would allow $3,500, and if plaintiff had to pay $3,500 they would allow $4,000 for the claim, according to the instructions of the letter; that as soon as the price was fixed with Reed and the claim secured, Hibbard would wire Fitch and the money would be sent to the bank, not more than fifteen days off at the longest.  Believing these statements to be made in good faith and relying on them, plaintiff went to Reed, and thereupon Reed falsely and designedly stated to plaintiff that the claim was already sold and that the price was $3,000; that the purchaser had not yet paid anything down, and that if plaintiff would pay for the claim first he could have it.

Thereupon plaintiff went at once and told Hibbard of the statements of Reed. Thereupon Hibbard pretended to wire to Fitch that the price was $3,500, and for him to send the money immediately to the bank. Hibbard again told plaintiff that he was anxious to get the claim, and urged plaintiff to raise the money.

Relying upon these statements, on August 12, 1907, plaintiff paid to Reed $3,000, and took a deed reciting a nominal consideration, with the name of the grantee left blank as instructed. Fitch had not written to Hibbard and had not sent a cruise of the timber by Withrow, and had not told Hibbard to pay any sum for the claim, nor did Hibbard wire Fitch as he pretended to do, and all of the statements so made by Hibbard were false and made by him to deceive and defraud plaintiff. The statements made by Reed to plaintiff to the effect that the claim was sold for $3,000 to a purchaser who had not paid anything down was false and made to mislead and deceive plaintiff. The statements made by Grandy to plaintiff were also false and known to be such by Grandy. All of the defendants knew at the time that the claim was without timber and valueless, and knew that plaintiff would rely on the statements of Hibbard; and plaintiff was induced thereby to part with his money, in the manner alleged. Plaintiff has at all times held the land for the benefit of the defendants. Plaintiff alleges that all of these false and fraudulent acts and representations were made by defendants for the common purpose of cheating and defrauding him. Plaintiff alleges in conclusion, "That by reason of the premises aforesaid plaintiff has been damaged in the sum of $3,000, besides costs and disbursements," and prays for judgment against all the defendants in that sum.

The learned trial court adopted the theory, upon the trial, that the complaint stated facts which would warrant a recovery upon the ground of conspiracy to defraud plaintiff. We think the complaint is good as against a general

demurrer, upon that theory. Some contention is made that the allegation of damage is not sufficient, since it is not specifically alleged that the claim is in fact worthless, but only that the defandants knew it was without value. Adopting the theory of the learned trial court, as we do, the question of value of the claim becomes of little or no consequence as a fact to be pleaded, because plaintiff is not claiming the land as his own. According to the complaint, it was never contemplated by him that the title should pass to him, but to Fitch, or whoever Fitch should designate as the grantee, the name of the grantee being left blank in the deed for that purpose. The value of the claim, as a matter of evidence, had some relevancy to the issues. If the claim in fact has but little or no value and defendants knew it, that fact would have a tendency to show that Hibbard never intended to have his step-father, Fitch, actually purchase it, and would also tend to show that the other defendants would likely know of such intentions on the part of Hibbard; but that would not make plaintiff's measure of damages the difference between the actual value of the claim and the $3,000 advanced by him for its purchase.

Some contention is made that the principal representations relied upon by plaintiff and inducing him to act were promissory in their nature and related to future events, rather than to existing facts. We think such is not the case. The representations made by Reed all related to existing facts. The representations made by Hibbard to the effect that Fitch had written Hibbard that he would purchase the claim and pay as much as $4,000 for it, and that Fitch had a cruise of the timber which he had sent to Hibbard, made by Withrow, showing it to be a valuable claim, clearly were intended as representations of existing facts. These, together with Reed's representations as to the necessity of paying the entire purchase price of $3,000 promptly, in order to get the claim, were well calculated, in view of the relation of the

parties, as shown by the allegations of the complaint, to induce plaintiff to act as he did.

The next general contention is that the court erred in granting a new trial. This contention is based upon the alleged insufficiency of the complaint, which we have already noticed, and also upon the theory that the nonsuit was properly granted. The record does not disclose the theory of the learned trial court in granting a new trial. It may have been only because he concluded that he was in error in granting the nonsuit, or he may have concluded that he was in error in excluding certain evidence touching the actual value of the claim. Plaintiff attempted to prove that the claim was of no value. This proof was excluded by the court. We have seen that such proof was admissible; and while the record does not so show, it is probable that the trial court entertained this view upon disposing of the motion for new trial. We have read all of the evidence and are of the opinion that it was sufficient, especially with the offered proof of the small value of the claim, to require the submission of the cause to the jury upon the theory we have indicated. In any event we cannot say from this record that the granting of a new trial was an abuse of discretion. In order to reverse this order we would have to conclude that upon no possible theory could plaintiff recover. The condition of the pleadings and the manner of trial rendered the issues and the theory of plaintiff's case somewhat confusing. We conclude, however, that the granting of a new trial was not erroneous. The order is affirmed.

RUDKIN, C. J., MOUNT, GOSE, and FULLERTON, JJ., concur.